IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-01687-CNS-MDB

JOSE ARROYO,
HEATHER BOEHM,
SAMUEL CORDO, and
AMBER MILLER,

    Plaintiffs,

v.

ALEXANDER HALL,
TIMOTHY HOLCOMB,
DEREK MYERS,
JOSHUA MOORE,
ANDREW PRIVETT,
DUSTIN ROSS,
CHAD WEISE, and
UNITED STATES OF AMERICA,

    Defendants.

---

# ORDER

---

Before the Court are several motions to dismiss filed respectively by

- Defendants Hall and Moore, ECF No. 274,
- Defendants Ross, Weise, and Holcomb, ECF No. 276, and
- Defendant Privett, ECF No. 308.

For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendants Hall and Moore's motion, ECF No. 274, and Defendants Ross, Weise, and

1

Holcomb's motion, ECF No. 276 The Court GRANTS Defendant Privett's motion, ECF No. 308. In doing so, the Court presumes the parties' familiarity with this case's factual and procedural background, including the detailed facts set forth in the Court's analysis of and order regarding Plaintiffs' summary judgment motion and the Westfall certification, *see* ECF No. 213 at 20–43, Plaintiffs' allegations, and the legal standard governing analyses of dismissal motions. *See, e.g., Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1274–75 (10th Cir. 2023). The Court addresses Defendants' motions in turn.

## I. ANALYSIS

### A. Defendants Hall and Moore

Defendants Hall and Moore make four primary arguments in support of dismissal: (1) Plaintiffs cannot plead a *Bivens* claim, (2) qualified immunity bars Plaintiffs' claims, (3) the Federal Employees Compensation Act (FECA) provides an exclusive remedy for Plaintiffs' state law claims, barring them, and (4) Plaintiffs' state law claims are time-barred. *See generally* ECF No. 274. The Court agrees with Hall and Moore as to their first argument, but not as to the others.

#### i. *Bivens'* Availability

Plaintiffs resist Hall and Moore's *Bivens* arguments. *See* ECF No. 286 at 10–15. But the Court addressed substantially similar *Bivens* arguments in its recent order on Defendant Myers' dismissal motion. *See Arroyo v. Hall*, No. 1:21-cv-01687-CNS-MDB, 2025 WL 843712, at *5–*8 (D. Colo. Mar. 18, 2025). And addressing Defendant Myers' *Bivens* arguments, the Court concluded "a *Bivens* remedy is unavailable" to Plaintiffs. *Id.* at *8. The Court discerns no reason to undermine its prior *Bivens* analysis and Plaintiffs

2

have failed to provide one in their response to Hall and Moore's motion. *Cf.* ECF No. 286. Accordingly, because—as explained fully in the Court's prior order—a *Bivens* remedy is unavailable to Plaintiffs, the Court agrees with Hall and Moore that it is improper to "extend *Bivens* to [Plaintiffs'] Complaint" and thus Plaintiffs' first claim should be dismissed. ECF No. 274 at 11. Because no *Bivens* remedy is available, the Court need not address Hall and Moore's other arguments attendant to Plaintiffs' *Bivens* claim. *See, e.g.,* ECF No. 274 at 12; *Arroyo*, 2025 WL 843712, at *5.

### ii. Qualified Immunity

Hall and Moore assert qualified immunity over Plaintiffs' three claims: one *Bivens* claim, one state law claim for intentional infliction of emotional distress, and one state law claim for civil conspiracy. *See, e.g.* ECF No. 274 at 14; ECF No. 297 at 6. Noted above, the Court need not consider whether qualified immunity shields Hall and Moore from Plaintiffs' *Bivens* claim. So the Court turns to Plaintiffs' argument that qualified immunity does not apply to state law claims. *See* ECF No. 286 at 10. The Court agrees with Plaintiffs, and declines to indulge Hall and Moore's argument that qualified immunity applies to the state law claims further. *See, e.g., Dashan v. Oklahoma*, No. 08-cv-370-TCK-FHM, 2008 WL 4899240, at *10 (N.D. Okla. Nov. 12, 2008) ("[Q]ualified immunity does not apply to state-law claims . . ."); *De Baca v. Meisinger*, No. 12-cv-698-BRB/RHS, 2013 WL 12333990, at *3 n.3 (D.N.M. Mar. 19, 2013) ("The federal doctrine of qualified immunity does not apply to state law claims." (citations omitted)).

### iii. FECA

Hall and Moore argue FECA was Plaintiffs' "exclusive remedy" for their state law claims, and therefore bars them. ECF No. 274 at 14. Plaintiffs disagree, arguing FECA is no bar to their claims because the statute only applies where a federal employee assert claims "against the government," not, as here, claims against "individual actors" such as Hall and Moore. ECF No. 286 at 8. The Court agrees with Plaintiffs. As the Court noted in its prior order, "FECA 'limits an employee's remedy against *the Government*, as [an] employer, to the confines of the statute.'" *Arroyo*, 2025 WL 843712, at *7 n.4 (quoting *Allman v. Hanley*, 302 F.2d 559, 563 (5th Cir. 1962)) (emphasis added). Other courts are in accord. *See, e.g., Gustafson v. Adkins*, 803 F.3d 883, 890 (7th Cir. 2015) ("FECA does not bar a federal employee's suit against individual co-employees.") (citations omitted); *Davis v. Harrod*, 407 F.2d 1280, 1283 n.2 (D.C. Cir. 1969). The Court finds their reasoning and statutory interpretation persuasive, and on this basis agrees with Plaintiffs that FECA does not bar their state law claims against individuals Hall and Moore.

### iv. Time-Barred

Hall and Moore argue a Colorado statute time bars Plaintiffs' state law claims. *See* ECF No. 274 at 15; ECF No. 297 at 8; *see also* C.R.S. § 13-80-103(c)(1). Plaintiffs argue the statute upon which Hall and Moore's argument is premised only applies to "state actors," not federal corrections officers or Bureau of Prisons (BOP) employees such as Hall and Moore. ECF No. 286 at 7. The Court agrees with Plaintiffs that the statute Hall and Moore cite does not apply and is not a bar to Plaintiffs' state law claims. In doing so,

4

the Court assumes Hall and Moore have not waived their right to assert their timeliness argument and declines to consider the parties' waiver arguments.

According to Hall and Moore, claims against "law enforcement authority" are barred if not brought within one year, pursuant to § 13-80-103(c)(1). ECF No. 274 at 15. Section § 13-80-103(c)(1) states that "[a]ll actions against sheriffs, coroners, police officers, firefighters, national guardsmen, or any other law enforcement authority" must "be commenced within one year after the cause of action accrues." Hall and Moore argue they are "law enforcement authorities" as defined under the statute, given as alleged in the Complaint "they were members of the prison Special Operations Response Team," and Plaintiffs' "complaint was not filed until almost two years after" the June 20, 2019 "incident occurred." ECF No. 274 at 16 (quotations omitted).

However, the Court agrees with Plaintiffs that § 13-80-103(c)(1)'s reach is not so broad, and does not reach *federal* correctional employees like Hall and Moore. *See* ECF No. 286 at 7. Review of additional Colorado legal authority confirms this. For instance, the Supreme Court of Colorado has explained that "law enforcement authority" refers "to those persons who have *the statutory authority* to enforce the laws of the State of Colorado." *Delta Sales Yard v. Patten*, 892 P.2d 297, 300 (Colo. 1995) (emphasis added). Further, Colorado courts use the terms "peace officer" and "law enforcement authority . . . interchangeably," *see San Agustin v. El Paso Cnty.*, No. 18-cv-02646-MEH, 2019 WL 4059167, at *31 (D. Colo. Aug. 28, 2019), and "peace officer" has been defined as including officers "whose duty is to enforce the local government laws and ordinances and preserve the public peace," *Delta Sales Yard*, 892 P.2d at 300 (quotations omitted)

5

(emphases removed). C.R.S. § 16-2.5-101(1) ("A peace officer . . . at a minimum, has the authority to enforce *all laws of the state of Colorado* while acting within the scope of his or her authority and in the performance of his or her duties.") (emphasis added). And to the extent Hall and Moore cite one Colorado statute regarding "federal law *enforcement officer[s]*" in reply, this statute arises in a distinguishable statutory regime regarding the authority of "peace officers" to *make arrests*—a regime and definition with minimal applicability to allegations attendant to federal corrections officers' behavior during a training exercise held at a federal facility. *Compare* ECF No. 297 at 9; *and* C.R.S. § 16-3-110(b) (defining "a federal *law enforcement officer*" as "peace officer") (emphasis added), *with* C.R.S. § 16-3-102(1) (explaining circumstances when "[a] peace officer may arrest a person").

At bottom, Hall and Moore have identified no legal authority—or factual allegations—explaining how they were "statutorily empowered," *The Gazette v. Bourgerie,* 560 P.3d 964, 972 (Colo. 2024), or given the "statutory authority," *Delta Sales Yard*, 892 P.2d at 300, under Colorado law to *enforce* Colorado law as *federal* employees. Accordingly, they do not fall under § 13-80-103(c)(1)'s definition of "law enforcement authority," and § 13-80-103(c)(1)'s statute of limitations is inapplicable and does not bar Plaintiffs' state law claims against Hall and Moore. *See* ECF No. 286 at 8.

\* \* \*

For the reasons set forth above, the Court grants Hall and Moore's motion to the extent it seeks dismissal of Plaintiffs' *Bivens* claim, but denies the motion to the extent it

6

seeks dismissal of Plaintiffs' second and third state law claims for intentional infliction of emotional distress and civil conspiracy, respectively.

### B. Defendants Ross, Weise, and Holcomb

Defendants Ross, Weise, and Holcomb make three primary arguments in support of dismissal: (1) Plaintiffs cannot plead a *Bivens* claim, (2) Plaintiffs' state law claims are time-barred, and (3) Plaintiffs' have failed to sufficiently plead viable intentional infliction of emotional distress and civil conspiracy claims. *See generally* ECF No. 276. The Court agrees with Hall and Moore as to their first argument, but not as to the remaining two.

#### i. *Bivens*' Availability

As with Hall and Moore, Ross, Weise, and Holcomb advance a series of arguments as to why Plaintiffs' *Bivens* claim must be dismissed. *See* ECF No. 276 at 4–11. Plaintiffs' contrary arguments are substantially similar to those made in their response to Hall and Moore's motion. *See generally* ECF No. 287. For the reasons set forth above and in the Court's prior order, the Court concludes dismissal of Plaintiffs' *Bivens* claim against Ross, Weise, and Holcomb is proper. *See Arroyo*, 2025 WL 843712, at *5–*8. Plaintiffs fail to persuade otherwise.

#### ii. Time-Barred

Citing § 13-80-103(c)(1), Ross, Weise, and Holcomb argue Plaintiffs' state law claims are time barred. *See* ECF No. 276 at 11. Assuming as with Hall and Moore that such arguments are not waived, Ross, Weise, and Holcomb's arguments overlap almost entirely with those advanced by Hall and Moore. *See, e.g.,* ECF No. 276 at 11. Accordingly, the Court rejects them for the same reason.

However, to the extent Ross, Weise, and Holcomb additionally argue that Colorado "corrections officers" are "peace officers," the Court is not persuaded, given Plaintiffs allege that Defendants were employed by the *federal* BOP as corrections officers, not the *Colorado* Department of Corrections. *See generally* ECF No. 1; *see also* ECF No. 287 at 10. And although Ross, Weise, and Holcomb cite one Colorado statute that defines certain federal employees as "peace officer[s]," C.R.S. § 16-2.5-147(1), Plaintiffs correctly observe that the employees listed in this statute do *not* include "federal corrections officers," such as Ross, Weise, and Holcomb, ECF No. 287 at 11. *See* § 16-2.5-147(1) (defining "[a] special agent of the *federal bureau of investigation* or the United States *bureau of alcohol, tobacco, firearms, and explosives*, a deputy or special deputy *United States marshal*, or an officer of the federal protective service of the United States *department of homeland security immigration and customs enforcement*, in any jurisdiction within the state of Colorado," as a "peace officer") (emphases added).

### iii.   Plausible State Law Claims

Ross, Weise, and Holcomb argue Plaintiffs have "failed to sufficiently plead a viable claim for relief as to the Intentional Infliction of Emotional Distress and/or Civil Conspiracy Claim." ECF No. 276 at 13; ECF No. 302 at 7. The Court addresses their arguments attendant to each claim in turn.

### i.   Intentional Infliction of Emotional Distress

Ross, Weise, and Holcomb argue "Plaintiffs' Complaint fails to allege adequate facts necessary to support the high bar to sufficiently allege the level of outrageousness necessary to support an" intentional infliction of emotional distress claim. ECF No. 276 at

8

14. Plaintiffs counter they have pleaded sufficient facts necessary to set forth their intentional infliction of emotional distress claim. *See* ECF No. 287 at 4. The Court agrees with Plaintiffs.

"To state a claim for intentional infliction of emotional distress (which is also known as outrageous conduct), a plaintiff must allege sufficient facts to show:

> (1) the defendant engaged in extreme and outrageous conduct;
>
> (2) recklessly or with the intent of causing the plaintiff severe emotional distress;
>
> (3) causing the plaintiff to suffer severe emotional distress."

*Maiteki v. Marten Transportation Ltd.*, 4 F. Supp. 3d 1249, 1256 (D. Colo. 2013) (quotations omitted).

*First*, Plaintiffs have adequately alleged Ross, Weise, and Holcomb engaged in "extreme and outrageous conduct." *Id.* While the bar for what constitute "outrageousness" is "extremely high," taking the Complaint's allegations as true and construing them in the light most favorable to Plaintiffs, those allegations demonstrate Ross, Weise, and Holcomb did much more than engage in "insults, indignities, threats, annoyances, [or] petty oppressions." *Id.* (quotations omitted). Indeed, Ross, Weise, and Holcomb allegedly

- Kicked the cashier's cage door open while "armed and wearing tactical gear";
- Burst into the cashier's office;
- Yelled for Plaintiffs to "get on the ground and pointed guns at Arroyo";
- "Pushed Plaintiff Cordo back several feet into a desk";

9

- Defendant Ross "punched [Plaintiff] Cordo in the face";

- Defendant Ross "pointed his gun at Arroyo and shot Arroyo in the chest with a simunition round from an actual nine-millimeter pistol," leaving a "bruise on his chest";

- Defendant Weise "punched Arroyo";

- Defendant Weise "walked up to the cashier's window and shot OC spray into the room";

- Defendant Holcomb "stepped into the cashier's cage and yelled at Moore to 'drag her ass out!'"

ECF No. 1 at 14–16 ¶¶ 66, 70–72, 75–76, 81.

Again: These are not mere insults. As Plaintiffs observe, they plausibly allege Ross, Weise, and Holcomb "threatened them, yelled expletives at them, shot chemical and other munitions at them, and violently assaulted them." ECF No. 287 at 5. This alleged conduct—which includes physical assaults—is sufficient to constitute outrageous conduct for purposes of Plaintiffs' claim. *See Kirk v. Smith*, 674 F. Supp. 803, 811 (D. Colo. 1987). And, the Court notes, this conduct undermines Ross, Weise, and Holcomb's borderline disingenuous reading of Plaintiffs' allegations. According to them, "[a]t most, what the Complaint shows is that a misunderstanding took place during [a] live training exercise, not intentional or outrageous conduct by any Defendant." ECF No. 276 at 14. Nonsense. *Cf. Clinton*, 63 F.4th at 1275 ("[W]e accept the well-pleaded facts alleged as true . . .").

*Second*, Plaintiffs have plausibly alleged that Ross, Weise, and Holcomb acted "recklessly or with the intent of causing the plaintiff severe emotional distress." *Maiteki*, 4 F. Supp. 3d at 1256 (quotation omitted). "A person acts recklessly in causing severe

10

emotional distress in another if, at the time of the conduct, he knew or reasonably should have known that there was a substantial probability that his conduct would cause severe emotional distress to the other person." *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882–83 (Colo. 1994) (citation omitted). Numerous allegations in the Complaint demonstrate Ross, Weise, and Holcomb "knew or reasonably should have known" that there was a "substantial probability" their conduct would cause emotional distress to Plaintiffs. *Id.* For example, Plaintiff Miller "began screaming for the officers to stop" but they did not. ECF No. 1 at 11 ¶ 53. Plaintiff Boehm yelled "You need to stop! We have contract staff and staff with medical issues in here!" *Id.* at 13 ¶ 63. Plaintiff Miller also yelled she was pregnant and concerned for her health. *See, e.g., id.* Nonetheless, officers, including Weise and Holcomb, "did not respond" and continued with the training exercise, *id.* at 14 ¶ 65, resulting in, among other things, Weise "walk[ing] up to the cashier's window and [shooting] OC spray into the room, directly at Cordo," *id.* at 14 ¶ 66. Fundamentally, taking the Complaint's allegations "as a whole," *Clinton*, 63 F.4th at 1275, Plaintiffs made it clear they feared for their physical safety, announced they went "out of role" based on that fear, ECF No. 1 at 14 ¶ 68, Defendants, including Ross, Weise, and Holcomb knew of Plaintiffs' fear, and persisted anyway in conducting the training exercise that would—and did—cause Plaintiffs severe emotional distress. *See Culpepper*, 877 P.2d at 882–83.

*Third*, Plaintiffs have adequately pleaded that they suffered severe emotional distress. *See* ECF No. 287 at 7; *Maiteki*, 4 F. Supp. 3d at 1256 (quotation omitted). They allege they all suffered "severe psychological trauma . . . as a result of" Defendants'

11

"attack," including Plaintiff Miller's "post-traumatic stress disorder" including the allegation that Plaintiff Boehm is "continually in therapy to deal with the psychological effects of the attack." Further, Plaintiff Cordo "has been diagnosed with post-traumatic stress disorder and continues to feel the psychological effects of the traumatic experience." ECF No. 1 at 18–19 ¶¶ 90–94; ECF No. 287 at 7.

Therefore, for the reasons set forth above, Plaintiffs' claim for intentional infliction of emotional distress survives Ross, Weise, and Holcomb's dismissal motion. *See Griffith v. El Paso Cnty., Colorado*, 129 F.4th 790, 836 (10th Cir. 2025) (noting the "high burden that must be met by a defendant who moves to dismiss at the pleading stage") (Ebel, J., concurring).

### ii. Civil Conspiracy

Ross, Weise, and Holcomb move to dismiss Plaintiffs' civil conspiracy claim on two grounds:

- Civil conspiracy is derivative of an intentional infliction of emotional distress claim, and Plaintiffs have not pleaded one of those, and

- There are no allegations "that a meeting of the minds occurred to form a conspiracy"

ECF No. 276 at 15. As for the first argument, the Court rejects it, as it concludes Plaintiffs have pleaded an intentional infliction of emotional distress claim. Therefore, it focuses its analysis on Ross, Weise, and Holcomb's second "meeting of the minds" argument. As to it, the Court agrees with Plaintiffs they have alleged a meeting of the minds. *See* ECF No. 287 at 8.

To set forth a civil conspiracy claim, a plaintiff must allege

12

>    (1) two or more persons,
>
>    (2) an object to be accomplished,
>
>    (3) a meeting of the minds on the object or course of action,
>
>    (4) one or more unlawful overt acts, and
>
>    (5) damages as the proximate result.

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1153 (D. Colo. 2005). Ross, Weise, and Holcomb's briefing puts only the third, "meeting of the minds" element at issue. *See* ECF No. 276 at 15.

Regarding this element, Plaintiffs' allegations provide sufficient "indicia of agreement" between Defendants, including Ross, Weise, and Holcomb. *Wright v. TEGNA Inc.*, 556 P.3d 333, 346 (Colo. App. 2024), *as modified on reh'g* (July 18, 2024) (quotations omitted). Reading Plaintiffs' allegations in their entirety, *see, e.g., Clinton*, 63 F.4th at 1275, the officers "continued ramming the door" to the cashier's cage together, and essentially assisted one another in coordinating their efforts in "terroriz[ing] the Plaintiffs," including by firing the OC spray into Plaintiffs' room, causing Plaintiffs severe physical and psychological injury, ECF No. 1 at 12–13, 18–19 ¶¶ 58, 61, 90–94. The Complaint contains additional allegations as to Defendants' coordinated efforts, such as when "Defendant Moore screamed at Boehm multiple times to exit the room, and Defendant Holcomb stepped into the cashier's cage *and yelled at Moore* to 'drag her ass out!'" *Id.* at 16 ¶ 81 (emphasis added). Indeed, drawing all reasonable inferences in Plaintiffs' favor, they plausibly allege Holcomb was involved in the events as the SORT leader, and other defendants adhered to his instructions. *See, e.g., id.* at 17 ¶ 86.

Accordingly, Plaintiffs have done more than allege Ross, Weise, Holcomb, and the other Defendants "merely communicated." *Wright*, 556 P.3d at 345 (quotations omitted). They have plausibly alleged that Defendants, including Ross, Weise, and Holcomb, had an agreement as to their course of conduct during the training exercise. *See Coomer v. Salem Media of Colorado, Inc.*, 565 P.3d 1133, 1154 (Colo. App. 2025). And while Defendants argue there was no meeting of the minds as to any *wrongful* conduct, given they only "agreed" to "engage Plaintiffs into peacefully exiting the cashier's cage," ECF No. 302 at 8, this misreads the gravamen of Plaintiffs' allegations, which the Court cannot—and will not—do at the motion to dismiss stage. *See, e.g., Clinton*, 63 F.4th at 1275.

The Court makes one final note. In a single sentence, Ross, Weise, and Holcomb argue that there are no allegations supporting "the proposition that what happened on that day was done with the purpose of involving an unlawful overt act or unlawful means." ECF No. 276 at 15. Even entertaining this cursory argument—which Ross, Weise, and Holcomb make no effort to meaningfully develop in reply—it fails because, as Plaintiffs observe, they have plausibly alleged intentional infliction of emotional distress claims against Ross, Weise, and Holcomb. *See* ECF No. 287 at 9; *In re Qwest*, 387 F. Supp. 2d at 1153; *cf.* ECF No. 302 at 8.

\* \* \*

For the reasons set forth above, the Court grants Ross, Weise, and Holcomb's motion to the extent it seeks dismissal of Plaintiffs' *Bivens* claim, but denies the motion to

the extent it seeks dismissal of Plaintiffs' second and third state law claims for intentional infliction of emotional distress and civil conspiracy, respectively.

### C. Defendant Privett

Defendant Privett makes three primary arguments in favor of dismissal: (1) Plaintiffs' claims are time-barred, (2) Plaintiffs' *Bivens* claim is "not a proper claim in this action," and (3) Plaintiffs have failed to adequately plead their state law claims for intentional infliction of emotional distress and civil conspiracy against Privett. *See generally* ECF No. 308. For the reasons set forth below, the Court agrees with Defendant Privett that dismissal of Plaintiffs' three claims against him is proper.

*First*, as explained above in the Court's timeliness analyses of Defendants' other dismissal motions, the statute Privett cites in support of his timeliness argument, § 13-80-103, does not bar Plaintiffs' claims against Defendants, who are *federal* employees. *Cf.* ECF No. 308 at 4. Given Privett "incorporates by reference" Ross, Weise, and Holcomb's timeliness arguments, *see id.*, the Court rejects Privett's timeliness arguments for the same reasons set forth above. And to the extent Privett cites an additional case in support of his argument, this case—which distinguishably concerns the powers of *sheriffs* under Colorado law—does not alter the Court's prior analysis, or Plaintiffs' allegation that Privett was "an employee of the BOP." ECF No. 1 at 3 ¶ 13; *cf. Bailey v. Clausen*, 192 Colo. 297, 302, 557 P.2d 1207, 1211 (1976) ("We hold the term '*sheriff*' is used in its generic sense and includes the whole class of officers performing the *duties of the office of sheriff*.") (emphases added). Nor does Privett's citation to a federal statute describing BOP employees' powers to make arrests for violations of specific federal laws under

15

enumerated circumstances empower them *under Colorado law* to *enforce* Colorado law such that they qualify as "law enforcement officers" under § 13-80-103. *See* ECF No. 312 at 5; 18 U.S.C.A. § 3050. *But see Delta Sales Yard*, 892 P.2d at 300; § 16-2.5-101(1).

*Second*, the Court agrees with Privett—for all the reasons explained above, and those supplied in the Court's prior order—that dismissal of Plaintiffs' *Bivens* claim against Privett is proper. *See, e.g.,* ECF No. 308 at 7; *Arroyo*, 2025 WL 843712, at *5–*8. Plaintiffs, reciting substantially the same arguments as those advanced in response briefs to other Defendants' dismissal motions, fail to persuade otherwise. *See, e.g.,* ECF No. 309 at 7.

*Third*, the Court agrees with Privett that dismissal of Plaintiffs' state law claims against him is proper. Privett correctly observes that the Complaint contains very few substantive allegations regarding his involvement in the incident's events, only that he was an officer from another federal prison complex visiting that day to "facilitate SORT trainings" and that Privett was a "Tactical Trainer [who] served as the Observer for the exercise." In that role, Plaintiffs allege, Privett was present with other SORT members "outside of the cashier's cage and was responsible for ensuring that the exercise went as planned." ECF No. 1 at 5,18 ¶ ¶ 22,89; *see also* ECF No. 308 at 11.

These allegations are insufficient to show that Privett engaged in conduct that was plausibly "outrageous" such that Plaintiffs' intentional infliction of emotional distress claim against him survives dismissal. *See* ECF No. 312 at 2. And Plaintiffs' brief, contrary argument—that Privett "facilitated the exercise" and was allegedly "responsible for it"— does not show his behavior, unlike that of Ross, Weise, and Holcomb, rises to a level of

16

indecency or violence as to clear the "extremely high" bar for asserting an intentional infliction of emotional distress claim against Privett. *Compare* ECF No. 309 at 5, *with Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003). And because Plaintiffs have not plausibly alleged a derivative claim for intentional infliction of emotional distress against Privett, dismissal of their civil conspiracy claim against him is also warranted. *See, e.g., Bd. of Cnty. Com'ns of Cnty. of Park v. Park Cnty. Sportsmen's Ranch, LLP*, 271 P.3d 562, 572 (Colo. App. 2011) ("Civil conspiracy is a derivative cause of action that is not independently actionable." (citation omitted)).

Accordingly, for the reasons set forth above, the Court grants Privett's dismissal motion.

## II.   CONCLUSION

Consistent with the above analysis, the Court ORDERS the following:

- Defendants Hall and Moore's motion, ECF No. 274, is GRANTED IN PART and DENIED IN PART. It is granted to the extent it seeks dismissal of Plaintiffs' *Bivens* claim, but denied to the extent it seeks dismissal of Plaintiffs' claims for intentional infliction of emotional distress and civil conspiracy;

- Defendants Ross, Weise, and Holcomb's motion, ECF No. 276, is GRANTED IN PART and DENIED IN PART. It is granted to the extent it seeks dismissal of Plaintiff's *Bivens* claim, but denied to the extent it seeks dismissal of Plaintiffs' claims for intentional infliction of emotional distress and civil conspiracy;

- Defendant Privett's motion, ECF No. 308, is GRANTED.

DATED this 16th day of June 2025.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge